UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL LEE SULLIVAN,

Plaintiff,

v.

SHERYL GONZALEZ and MARIE GLASGOW,

Defendants.

_______________________________/

Case No. 2:25-cv-11912
District Judge Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 25)**[1]

I. Introduction

This is a prisoner civil rights case. Plaintiff Earl Lee Sullivan, proceeding *pro se*, is suing Sheryl Gonzalez, N.P. and Marie Glasgow, F.N.P.[2] alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment while he was housed at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. (ECF No. 1). He has since been moved to

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

[2] Defendants' names have been spelled as they appear in their filings. *See* ECF No. 9.

the Ionia Correctional Facility (ICF) in Ionia, Michigan. (ECF No. 8). Under 28 U.S.C. § 636(b)(1), all pretrial matters have recently been referred to the undersigned. (ECF No. 10).

Before the Court is defendants' motion for summary judgment. (ECF No. 25). Sullivan has submitted a response to defendants' motion (ECF No. 29) and defendants have replied. (ECF No. 30). For the reasons set forth below, the undersigned RECOMMENDS that defendants' motion be GRANTED. If this recommendation is adopted, the case will be closed.

## II. Background

### A. Allegations

According to the complaint, Sullivan suffers from intense back pain. (ECF No. 1). In 2023 he was diagnosed with "kissing disk," an ailment that necessitated surgery. (*Id.,* PageID.16). In addition to his back pain, Sullivan suffers from kidney and liver "functionality issues." (*Id.*). Rather than being prescribed any sort of pain killers that could wreak further damage on his internal organs, Sullivan was given ice packs to numb his aching back. (*Id.*). Sullivan states that the ice packs were intended to be used routinely until the time of his surgery "sometime in 2023-24." (*Id.*). The surgery, however, was delayed after Sullivan experienced a "setback" "sometime in 2024" where he had "a stint placed in his heart to alleviate a blockage." (*Id.*).

Sullivan's claims derive from his respective appointments with Gonzalez and Glasgow. Sullivan states that in September 2024, Gonzalez discontinued his ice pack treatment. (*Id.,* PageID.17). After this appointment, Sullivan submitted numerous kite requests for ice among other complaints relating to back pain. (*Id.*).

In December 2024, Sullivan met with Glasgow for a medical appointment. (*Id*., PageID.17). There, Sullivan states that despite discussing his need for ice, he was denied. (*Id*.). Sullivan claims that at the appointment, Glasgow refused to go against her "friend" Gonzalez's decision to revoke his ice. (*Id.*, PageID.17-18). Glasgow allegedly informed Sullivan that ice is not provided for periods longer than three days.[3] (*Id.*).

Now Sullivan has sued defendants for deliberate indifference under the Eighth Amendment.[4] (*Id.,* PageID.19).

---

[3] Sullivan later submitted a sworn affidavit stating that he was directed by the respective defendants to leave the appointment. (ECF No. 29, PageID.252).

[4] In Sullivan's complaint, he includes a single paragraph that states, "[t]he defendants have knowingly deprived the plaintiff of his right to equal protection and due process under the 14th amendment of the United States Constitution." (ECF No. 1, PageID.19). However, his complaint revolves entirely around his claim of deliberate indifference, and it is the only claim for which he requests relief. (*Id.*). Nowhere in his complaint does he expand on his brief mention of due process or equal protection or make out a claim for either, and the parties in their papers address only the Eighth Amendment claim. *See* ECF No. 29, PageID.244 ("Plaintiff[] bring[s] this action under 42 U.S.C. § 1983, alleging that Shery Gonzalez, N.P. and Marie Glasgow, F.N.P. were deliberately indifferent to a serious medical need in violation of the Eighth Amendment…."). As such, the complaint should be construed as bringing only an Eighth Amendment deliberate indifference claim.

B. Record Evidence

Medical records show that on January 3, 2023, Sullivan attended a consultation with a nurse practitioner at Henry Ford Allegiance Neurosurgery to discuss ongoing pain in his lower back and leg. (ECF No. 25-1, PageID.182). During this appointment, the nurse practitioner discovered complications in his lower spine and recommended that he undergo L4-S1 fusion surgery. (*Id.*, PageID.184). This recommendation was approved on January 16, 2023; however, Sullivan required additional clearance for his cardiovascular issues, which delayed the scheduling of his surgery. (*Id.*, PageID.194).

On May 20, 2024, Peter Watson, N.P. saw Sullivan for a provider appointment, where he wrote Sullivan a special accommodation detail to receive an ice pack to apply to his lower back for pain relief, set to expire on August 20, 2024. (ECF No. 25-1, PageID.195-199). One week after the expiration of Sullivan's ice detail, on August 27, 2024, he underwent a stent placement. (*Id.*, PageID.200). That same day, Sullivan received an "[i]ce detail X3 days exp 8/30/24." (*Id.*, PageID.202).

On September 9, 2024, Sullivan submitted a kite request for a new ice pack, which was received by department administrators on September 12, 2024. (*Id.*, PageID.203). The response on the request indicated that Sullivan was "seen by a medical provider on 9/12/24." (*Id.*).

That day, Sullivan met with Gonzalez regarding his blood pressure, hyperlipidemia, and urological concerns. (*Id.*, PageID.204). Regarding the status of his low back pain, the note documented:

> Chronic and unchanged, neurosurg requested cardiac clearance which pt did not pass, full cardiac work up done. Still not cleared, cardiac stents x 3 placed 3 days ago. follow up with cardiology as scheduled.

(*Id.*, PageID.208). The note also indicates that after Gonzalez informed Sullivan that JCF did not allow unlimited bathroom access, he became upset and declined to speak further with her. (*Id.*, PageID.205). There is no indication that ice packs were discussed. (*Id*. PageID.204-210). In her affidavit, Gonzalez says that Sullivan "became upset and abruptly ended" his appointment, and that at no point during the appointment did Sullivan indicate that he needed or was requesting that his ice pack detail be renewed. (ECF No. 25-2, PageID.229).

On December 12, 2024, Sullivan had an appointment with Glasgow, where he complained of back pain and asked for ice. (ECF No. 25-1, PageID.226). The note states:

> Pt C/O back pain and wanting Ice. Instructed Pt that ice detail is only for 3 days post op. Pt got up and left. Would not let me examine him or discuss his need for metformin and flomax. Will call Pt.

(*Id.*). In her affidavit, Glasgow states that after Sullivan requested an ice pack, she reviewed his prior medical records and "found a medical detail issued on August 27, 2024, for Mr. Sullivan to receive an ice pack for three days post-op from his

August 27, 2024, stint placement surgery." (ECF No. 25-3, PageID.232). She says that during the December appointment, she "informed Mr. Sullivan that his previous ice pack detail had only been for three days post-op from his August 27, 2024, surgery," after which he became upset and ended the visit. (*Id.*, PageID.232). Glasgow says that because Sullivan ended the appointment, she could not discuss his request for an ice pack further. (*Id.*, PageID.233). She also explains that in her medical opinion, ice is not an effective means for long term pain management. (*Id.*).

## III. Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists…." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citation omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a

party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Sullivan is *pro se* does not reduce his obligations under Rule 56. Instead, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.,* 201 F. App'x 338, 344 (6th Cir. 2006). Moreover, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (citation modified).

## IV. Discussion

### A. Standard

Sullivan's claim against Gonzalez and Glasgow is rooted in the Eighth Amendment, which prohibits deliberate indifference to a prisoner's serious medical needs. The Eighth Amendment grants prisoners a constitutional right to medical care when they need it. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Moreover, a

prison official cannot act with deliberate indifference toward the medical needs of prisoners. *Id*. at 104. Deliberate indifference under the Eighth Amendment is borne out of two components: the first, objective, and the second, subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

First, the objective component requires that a plaintiff "allege that the medical need at issue is 'sufficiently serious.'" *Comstock*, 273 F.3d at 702-03 (quoting *Farmer*, 511 U.S. at 834). A condition is sufficiently serious where it is diagnosed by a physician or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004). To satisfy the objective component, the plaintiff must demonstrate that, regarding a sufficiently serious condition, they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A serious medical condition may only fulfill the objective component on its own where "doctors effectively provide no care for it." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021). But where doctors provide some care and the plaintiff challenges it as inadequate, the plaintiff must demonstrate that the care was "grossly or woefully inadequate." *Id*. at 535.

In addition, voluntary refusal of treatment precludes an Eighth Amendment claim. *Palmer v. Wagner*, 3 F. App'x 329, 331 (6th Cir. 2001); *see also Johnson v.*

*Allen*, No. 1:15-CV-1329, 2016 WL 860428, at *4 (W.D. Mich. Mar. 7, 2016) ("Plaintiff's insistence on another course of treatment resulted in no treatment at all."). This rule is not limited to the Sixth Circuit and is recognized by many other Circuit Courts as well. *See, e.g.*, *Richard v. Bokor*, 379 F. App'x 719, 720-22 (10th Cir. 2010) (prisoner failed to state a claim for deliberate indifference where he thwarted medical personnel's efforts by disrupting the medical visits and refusing the offered treatment); *Day v. Lantz*, 360 F. App'x 237, 238–39 (2nd Cir. 2010) (prison employees were not deliberately indifferent to plaintiff prisoner's serious medical needs when they diagnosed and treated the prisoner's inguinal hernia, but the prisoner refused to undergo surgery to repair it); *Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006) (affirming judgment in favor of medical personnel on inmate's claim of deliberate indifference where the inmate was the sole cause of delay in treatment).

Second, the subjective component requires that the plaintiff "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703.

B. Analysis

Defendants argue that there is no genuine issue of material fact that Sullivan cannot satisfy the objective or subjective components of deliberate indifference for

either defendant. (ECF No. 25, PageID.169). The undersigned agrees. On the objective element, Gonzales and Glasgow do not appear to dispute that Sullivan's back pain constituted a serious medical need but argue instead that Sullivan has not shown that either of them provided inadequate care, especially in light of the continuing care he was receiving for his back issues.

Sullivan undisputedly received medical care concerning his back pain. *See* ECF No. 25-1. He was approved for spinal fusion surgery and was in the process of getting cleared for that surgery with cardiology, which involved getting stents placed. (*Id.*, PageID.208). The parties spend a considerable amount of time arguing about whether Sullivan left his appointments voluntarily or was kicked out, but ultimately, to satisfy the objective component, Sullivan must show that the care he received was "grossly or woefully inadequate." *Phillips*, 14 F.4th at 535. Proving that the care he received was grossly inadequate in this situation would require expert testimony. *Phillips*, 14 F.4th at 536 ("[The plaintiff] needed to present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so."). Both Gonzalez and Glasgow also assert that in their medical opinions, ice is not effective for long term pain management. (ECF No. 25-2, PageID.229; ECF No. 25-3, PageID.233).

Putting aside the issue of whether Gonzalez knew about Sullivan's request for ice or whether Glasgow had the opportunity to discuss Sullivan's request with him after the appointment terminated, there is no evidence here to show that a competent doctor would have found an ice detail medically necessary, and at the summary judgment stage, the absence of such evidence is fatal to the claim. As defendants explain, "the accommodation at issue was a conservative comfort measure involving access to ice packs, not the denial of surgical intervention, emergency care, medication, or other medically necessary treatment." (ECF No. 25, PageID.174). What Sullivan alleges is therefore "a disagreement regarding conservative pain-management measures during an ongoing course of treatment," which "implicate[s] medical judgments and not the Eighth Amendment." *Hale v. Corr. Med. Servs., Inc.*, No. 1:10-CV-1008, 2012 WL 4382361, at *9 (W.D. Mich. Aug. 21, 2012), *report and recommendation adopted*, 2012 WL 4381917 (W.D. Mich. Sept. 25, 2012); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). As such, Sullivan has not shown a genuine dispute on the objective element of a deliberate indifference claim.

On the subjective element, defendants argue that because Gonzalez was not aware of Sullivan's request for an ice pack, she was not subjectively aware of Sullivan's serious medical need and therefore did not disregard any risk associated with Sullivan's treatment. (ECF No. 25, PageID.176). Indeed, Sullivan has not provided any evidence to show that Glasgow knew of a substantial risk to his health and then disregarded it by refusing to provide him with an ice detail. There is no indication that his request for an ice detail was discussed at the appointment with Gonzalez, and there is no indication that Gonzalez reviewed the kite that Sullivan sent regarding his request for ice.

For Glasgow, unlike Gonzalez, the medical record does establish that Sullivan did inform her of his request for an ice pack. (ECF No. 25-1, PageID.226). The parties again disagree about whether the appointment ended on Sullivan's own accord, or if Glasgow removed him from the clinic,[5] (ECF No. 25, PageID.167; ECF No. 29, PageID.252), but this dispute is immaterial. Even

[5] The parties, again, spend considerable time arguing this point. Sullivan submitted an affidavit from another inmate, Mark Abraitis, who claims that he helped a lot of other inmates write grievances against Gonzalez and Glasgow, and that "an alarming amount of complaints about the NP[]s above mentioned abruptly telling inmates to leave their offices and stopping the appointments." (ECF No. 31, PageID.295). Defendants argue both that Abraitis' affidavit is not valid and that the statements contained therein are hearsay. (ECF No. 34, PageID.314-315). The Court is inclined to agree, but as explained, need not make a final determination on the merits of this argument because how the appointment ended is immaterial.

Glasgow's knowledge of Sullivan's request for an ice detail does not establish that she inferred a substantial risk to his health and then disregarded it when she did not extend the ice pack detail, whether that was because Sullivan left the appointment or because she terminated it and used her medical judgment to determine that an ice pack detail was only an appropriate measure for a short period of time post-surgery, as she states in her affidavit. *See* ECF No. 25-3, PageID.233. Ultimately, Sullivan, with or without an ice pack, was scheduled to undergo surgery for his back and was in the process of getting clearance for that surgery. (ECF No. 25-1, PageID.184).

Glasgow specifically states she reviewed only Sullivan's most recent ice pack detail, which was only for three days. (ECF No. 28, PageID.240). Sullivan's claims that Glasgow should have done more regarding an ice detail do not indicate that Glasgow subjectively perceived a risk in not issuing the ice. *Comstock*, 273 F.3d at 703. As such, Sullivan's claim of deliberate indifference fails on the subjective component as well as the objective component against both defendants. They are therefore entitled to summary judgment on Sullivan's Eighth Amendment claims.

## V. Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motion for summary judgment (ECF No. 25) be GRANTED.

Dated: August 11, 2026
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 11, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager